# Hemphill *against* Carpenter.

After the lapse of seven years, the lands of a decedent are discharged from the lien of his debts not of record, whether they be in the possession of the heir or a purchaser; and the fact that the heir or a purchaser knows of the existence of a debt, and the heir agrees that it shall be binding upon the estate, does not alter the case; the purchaser is required only to look to the record; parol proof will not affect him.

ERROR to the district court of *Lancaster* county.

Joseph Hemphill and James Hopkins, Esquires, against James Galbreath, surviving administrator of Samuel Galbreath, with notice to Dr Abraham Carpenter, terre-tenant of the land, of which Samuel Galbreath died seized.   A judgment, *de bonis intestati*, was entered by consent against the administrator of Samuel Galbreath, and the terre-tenant made defence, that his land was not bound.

The court below (Hays, president) was of opinion, and so instructed, that the land of the terre-tenant was not bound.   Verdict and judgment for the terre-tenant.

*Norris,* for plaintiff in error.
*Montgomery,* for defendant in error.

All the facts and questions determined are fully stated in the opinion of the Court, which was delivered by

HUSTON, J.—Samuel Galbreath, a son of B. Galbreath, claimed that his father had given him, as an advancement, a tract of land in Lancaster county.   The other heirs contested this: and an ejectment was brought for it, by Dr L. Murray and wife, in right of his wife and the other heirs of B. Galbreath.   Samuel Galbreath employed the plaintiffs as his counsel; and gave the two single bills, on which this suit is brought, one for 200 dollars and another for 700 dollars, payable when the defendant succeeded in that suit; he did succeed.   The cause was tried in 1809, and verdict and judgment for Samuel Galbreath.

[Hemphill v. Carpenter.]

Samuel Galbreath died in 1810, leaving three children, two sons, and a daughter, now married to Dr Lieper. The two sons are dead without issue; James died first, and intestate. The interest of Bartram, the other son, who died indebted, was sold and purchased by Dr Carpenter, in November 1827. Lieper and wife sold the share of the wife (one half) to Rufus Kellog, on the 7th of February 1827, and Kellog sold to Dr Carpenter, on the 8th of June 1827.

The deposition of Mr Lieper was taken in this cause; much of it was rejected and properly rejected as irrelevant, or as hearsay. The part admitted stated that he was married to Miss Galbreath, and understood from others, and from Dr Carpenter, (who had been guardian of his wife,) that the estate was incumbered with certain debts, and that the fees of James Hopkins and Joseph Hemphill, were to be paid out of said estate; and that the debts and fees were always calculated when he estimated the value of the estate; and that Rufus Kellog agreed to pay deponent's wife's proportion of the debts owing by the said estate, among which the debt to Hopkins and Hemphill was enumerated. The deed, however, said nothing about this. Rufus Kellog is dead; but his brother Frederick, who was present at the sale to Dr Carpenter, was examined, and part of this examination was also properly rejected. He stated, that he was not present at the previous arrangement, but was present when the money was paid, and the deed executed and delivered; at this time there was conversation between them. Dr Carpenter had a list of the liens on the land, but deponent does not know the items. Dr Carpenter said the attorneys' fees were high; Rufus said, if he had recovered the land he would have had to pay the fees; and that if Dr Carpenter recovered it, he (Rufus) would have sold him a great bargain. The said fees and liens were not exactly credited against the price of the land, but deponent understood from the parties, that they had made a lumping bargain; that Dr Carpenter had agreed to give a certain sum (2000 dollars) for the interest and right of the said Rufus, in and to the land, whatever that interest and right might be, subject to all the said liens and to the payment of the said fees; Dr Carpenter considered the said fees as a debt against the property, and urged that as one reason for the sufficiency of the price he had agreed to give.

The act of the 4th of April 1797, provides that debts not secured by judgment or mortgage, shall not be a lien on the lands of a deceased person longer than seven years, unless a suit is brought or the bond filed in the office of prothonotary. These bonds were not filed, and the suit was not brought until 1830, more than twenty years after the death of Samuel Galbreath.

Dr Carpenter appeared to the suit against the administrator, and pleaded that this land was not liable for this debt, by the above act.

[Hemphill v. Carpenter.]

The plaintiff replied that Dr Carpenter had notice of the lien, and further, that it formed part of the price, &c. Defendant denied this.

There were bills of exceptions to other decisions of the court, rejecting testimony offered by the plaintiff, which, however, were not urged here as error.

Certain points of law were proposed to the court, and the answers are alleged as errors.

The first was, that the act of the 4th of April 1797, before referred to, only protected *bona fide* purchasers of the lands of a deceased person, who had no notice of the debts. The repeated decisions of this court ought to have put this point at rest. Kerper *v.* Hock, 1 *Watts* 9, and other cases since, have decided that this act protects children who have not sold, as well as purchasers from other children; if it did not, all the children but one might sell, and the land be clear; and the whole debts fall on the share of the youngest child, whose minority prevented a sale by such child.

Acts of limitation operate on the person and the debt; or, as some say, the remedy for the debt; thus six years bars the recovery of a simple contract debt; but as this limitation is for the benefit of the debtor, he may waive it, and continue the debt or revive it by a new promise. Other acts, as this of 1797, and the act of 1798, limiting the lien of debts and judgments, do not affect the debt as between debtor and creditor; that, so far as respects these acts, is not touched, but they affect the lien on lands of the debtor. The purchaser, is to look to the law and the record, and his case is to be decided by these, and not by parol proof, or any proof but the record. The agreement of the debtor that the lien shall continue beyond the time prescribed by law, although the directions of the law are not pursued, would not affect a purchaser, even though he was told of such agreement. This seems to be the clear result of Black *v.* Dobson, 11 *Serg. & Rawle* 94, and Bombay *v.* Boyer, 14 *Serg. & Rawle* 253; and it must be so, or liens depend not on the record but on parol evidence.

A second proposition submitted was: If the jury believe, on the evidence, that the plaintiffs omitted to bring suit on the single bills within seven years after the death of Samuel Galbreath, in consequence of an understanding with the heirs, that they should, nevertheless, remain a charge on the land in the hands of the heirs; and that Dr Carpenter, as guardian of Juliet Galbreath, was a party to this arrangement, and acceded to its propriety, and afterwards purchased the share of Bartram Galbreath, at sheriff's sale, and the share of Juliet, from a purchaser, with notice of the arrangement, and received, at the time of the latter purchase, an allowance and actual deduction from the price and valuation fixed upon the same, with the understanding that they remained charged upon the land, and should be paid out of it, he cannot now take

advantage of the act of the 4th of April 1797, to hold the same discharged from the debt due the plaintiff from the estate of Samuel Galbreath.

To this the court answered: First, " There is no allegation that the plaintiffs omitted to bring suit on the single bills within seven years after the death of Samuel Galbreath, in consequence of such an arrangement as is here mentioned, or that Dr Carpenter, as guardian of Juliet Galbreath, was a party thereto. These facts are consequently out of the issue; and if they were not so, I do not think there is any evidence of them in the cause. With respect to the latter portion of this proposition, I am of opinion, that if the fact be established, by the testimony, that Dr Carpenter obtained the land of Frederick Kellog at a less price, in consequence of this claim upon these single bills, yet he is not precluded from the benefit of the act of the 4th of April 1797."

We see no error in this. The law requiring the judge to write and file his answer on legal points arising in the cause, would possibly have been beneficial, if it had not been improperly used. No counsel ought to suggest facts of which there is no evidence, nay, which were impossible, as none of the heirs of Samuel Galbreath were of age within seven years after the death of their father, and the court was perfectly right in laying this part of the request out of the case.

As to the other part, the proof is express, that it was a lumping bargain, so much for Kellog's title, whatever that might be, subject to all the liens, and to the payment of the fees; so that Dr Carpenter should stand exactly in the place of said Rufus Kellog, and Rufus to be at no expense or risk, and to receive said price. It will be observed the fees spoken of were to become due in a cause then to be tried; and if it should be gained, Dr Carpenter's bargain, it was said, would be a very good one; that part of the conversation could not have related to this cause, which had been tried and gained in the lifetime of Samuel Galbreath. There must have been some other cause then pending, for the trial of which the fees spoken of became due. Our reports showed there was such a cause, and the counsel many of them well knew it; whether Dr Carpenter has compromised that cause, or has had a trial, or is still to have one, or has paid, or is to pay the fees for it, we know not, nor is it material in this case.

There was a time when an unaccountable prejudice existed as to the act of the legislature, limiting claims and time. The judges of this court, some of whom preceded us, were among the first to restore this class of most beneficial, and actually necessary laws to their place in the statute book and jurisprudence of our country. There was a time when, if a testator directed in his will that his executor should pay his debts, it revived debts long barred by acts of limitation. This was decided, twenty years ago, not to be law

VI.—D

in this state. The principle then overruled is, however, attempted to be revived in this cause. A judgment, or several judgments, may bind or may have bound land; it is sold and the purchaser takes it knowing all this, and gives the former owner a price, and is to take the land subject to liens, and at the risk of title. This cannot keep alive a lien which expires thereafter, or revive one which had expired, or restore to life and efficiency an adverse title barred by lapse of time.

It is not necessary to say any thing of a case where a vendor makes out a list of liens which bind the land and bind him personally, and sells for a specified price, say 4000 dollars, and it is agreed the vendee shall pay these debts, amounting to, say 2000 dollars, and pay the balance to the vendor; the proof is express, that that was not the agreement in this case.

The court decided, that, on the evidence, if all was believed, the act of the 4th of April 1797, barred the plaintiff's recovery. And as this was right we need say nothing more; but the court went farther, and said on the evidence, plaintiffs could not support an action, or this action, against the defendant; and in this we cannot say there is error; it is immaterial what would have been the law if plaintiffs had proved the facts supposed in their second point to the court; or had made out a case different from this. Such case must be decided when it occurs; it would not seem to be within the range of our duty to say any thing beyond the case before us. This, also, renders it unnecessary to notice the points proposed by the defendant.

Judgment affirmed.