# M'Curdy's Appeal.

5ws397
154 291
5ws397
172 195
5ws397
196 500

The lien of the debts of an intestate upon his real estate is subject to the same limitation in the hands of an administrator, who has paid them out of his own funds, as they are in the hands of the original creditor; and after the lapse of five years, the Orphans' Court will not decree the sale of real estate to pay a balance found to be due to an administrator upon the final settlement of his account.

THIS was an appeal by John M'Curdy, eldest son of John M'Curdy the elder, deceased, from the decrees of the Orphans' Court of *York* county, in refusing to order the real estate of said deceased to the appellant, and in ordering the same to be sold for the purpose of paying a debt due the administrator.

John M'Curdy the elder died intestate in 1827.　Soon after his death, on the 3d August 1827, letters of administration on his estate were duly granted to Alexander M'Curdy.　On the 3d November 1829, the administrator exhibited into the register's office an account, showing a balance in his favour of $840.94.　On the 8th December 1829 this account was presented to the Orphans' Court, and confirmed.　On the 8th January 1832 the administrator exhibited into the register's office his second account, showing a balance in his favour of $891.80¼, including the balance on first account.　This account was presented to the Orphans' Court on

the 14th February 1832, and on the same day exceptions were filed to it. By report of auditors, filed and confirmed 5th November 1833, this balance was reduced to $861.03½. On the 19th March 1839, the administrator exhibited in the register's office his third account, showing a balance in his favour of $1307.72, including the balance on said report. This account was presented to the Orphans' Court on the 14th May, and exceptions were filed to it on the 23d June, 1839. By proceedings on the exceptions to the third account, the balance in favour of the administrator was reduced to $353.03.

On the 11th November 1842, the widow and heirs presented a petition to the Orphans' Court to appoint seven persons chosen by them to make partition of the real estate of the decedent, which was then granted. On the same day the administrator presented a petition to the Orphans' Court, praying for an order to sell the real estate for the purpose of paying him his balance on his third account. This petition was then filed, and the security offered approved. On the 7th December 1842, the seven persons appointed to make partition of the real estate, reported that it would not admit of being divided, and that they had therefore appraised it at $2040. On the same day the report was confirmed. On the 3d May 1843, John M'Curdy, the eldest son of the decedent, came into the Orphans' Court, and prayed to be permitted to take the real estate at the valuation, and that it might be decreed to him, and offered to give security to the satisfaction of the court, by recognizance or otherwise, as the court should direct, for the payment of the other parties in interest, their proportionable parts of the estate, and also to Alexander M'Curdy, the administrator, the balance due him on his administration account, provided he be entitled in any way to be paid the same out of the said real estate. Alexander M'Curdy objected to the real estate being decreed to John M'Curdy. The court refused to decree the real estate to John M'Curdy, and awarded a sale on the petition of Alexander M'Curdy.

Errors assigned :

1. The court erred in not decreeing the real estate to John M'Curdy at the valuation.

2. Also in granting an order to sell the real estate, more than seven years after the decease of the decedent, for the purpose of paying a debt.

*Campbell* and *Mayer*, for appellants, argued that the law was clearly settled, that the lien of the debts of intestates was gone after seven years by the Act of 1797, and now five years by the Act of 1834; and there is no reason why the case of a debt due to an administrator should form an exception to the rule. On the contrary, the reason which produced the construction which the Act has received, is applicable with greater force to an adminis-

trator, whose particular knowledge of the affairs of the estate might induce him to speculate upon the ignorance of the heirs, until their whole estate was swallowed up by the encumbrance of secret liens in the hands of the administrator, made the more secret by the fact of their having been paid by him whose duty it was to see that they were paid within the time prescribed by law. 1 *Watts* 13; 2 *Watts* 53; 4 *Watts* 13; 6 *Watts* 22; 7 *Watts* 224; 8 *Watts* 253.

*Chapin* and *Barnitz*, contra, argued that the construction given to the Act of Assembly by the case of *Kerper* v. *Hoch*, cited by plaintiff in error, was a surprise upon the profession, and certainly of doubtful propriety; but the proposition now contended for is still more exceptionable. Even under those decisions, if suit were brought or the claim filed, the lien would be saved. What is this but a mode of giving notice of the debt to the administrator, upon whom the process is served if suit be brought? What is there in the whole policy of the law, as now settled, but that notice shall be given, and that secret liens or claims shall not take the estate from the heirs after they have improved it? Here they had the most abundant notice; for the administrator settles an account in 1829, again in 1832, and again in 1839, all showing balances in his favour greater than that now claimed, and to the settlement of which the heirs made themselves parties by exceptions filed. It is a monstrous proposition, then, by which this debt of the administrator is to be defeated as a secret lien—a debt caused by an effort of the administrator to save the estate for the benefit of the heirs.

The opinion of the Court was delivered by

SERGEANT, J.—The administrator, by being creditor, or making himself so in consequence of his advancing money out of his own pocket to pay off the debts due by the intestate, cannot place himself as to the real estate in a better situation than other creditors. They would be barred by suffering seven years, under the former Act of 4th April 1797, sec. 4, (and now by the Act of 24th February 1834, sec. 24, five years), to elapse without pursuing their claims according to the modes prescribed in the Act; and there is the same reason, considered in any point of view, why the limitation should exist as to the administrator. His payment of the debts out of his private funds is gratuitous; although he has a right, he is not obliged to do it, but may require creditors to proceed according to law to sell the real estate, or may within the limited time have it done for his own payment, under the provision for his benefit contained in the Acts of 1st April 1811, sec. 2, and 20th March 1832, sec. 31. It would be going a great way to hold that the administrator could prolong the lien whenever he saw fit, at his own will and pleasure, by holding back his claim, or by

advancing his own money to a creditor of the estate, though the creditor himself, in whose place he stands, would have been barred if he had stood by for that length of time, and neglected to comply with the directions of the law. He is, as to liens on the real estate, in no different position from other creditors. The limitation of these liens against the real estate of the decedent has been decided in many cases to have been prescribed as well for the benefit of heirs and devisees, as of purchasers, in order to compel vigilance by creditors in bringing the affairs of the estate to a conclusion, and to secure the real estate against latent and indefinite liens: all of which would be defeated by enabling an administrator to take these debts out of the statute, and let them lie over indefinitely, to be put in force at some distant day, and then selling the real estate in the hands of the heirs to satisfy them. The inconvenience and mischief would be quite as great, whether the administrator owns the claims, or they remain outstanding in the hands of other creditors; and such privilege given to the administrator might be a temptation to him to traffic in the funds of the estate, and to procrastinate the settlement of it: whereas one great object of the law, apparent throughout the provisions made in regard to the estates of decedents, is, to obtain their speedy adjustment and distribution, so that the claims of creditors may be discharged, and the heirs, devisees or legatees, be able to know in some reasonable time what is left for them of the property of their ancestor.

We are of opinion that the real estate, after the lapse of more than seven years from the decease of the intestate, was freed by the limitation Acts from these claims of the administrator, and that there was no authority to order it to be sold to pay his debts, and that the decree of the court on the petition of Alexander M'Curdy, ordering the sale, should be reversed.

Decree of sale reversed, and the case remitted to be proceeded in.