# Eyster's Appeal.

1. The record of the Orphans' Court is evidence of the appointment of a guardian; the issuing of a certificate of the appointment is not material; an act as guardian, by the person appointed, is an assumption of the trust.

2. Guardians are liable for wilful default or gross negligence; but they are allowed the exercise of reasonable discretion and prudential care in managing the property of their wards. Therefore, where a guardian permitted the rents of a small property to be received by the widow, and the share of the ward in the rents to be applied by her to the maintenance and education of the ward, who was her son and was residing with her, the guardian is not accountable to the ward for the rents, the said rents not being an unreasonable provision for the purpose.

3. The balance due the administrator of the estate in which the ward is interested, upon the settlement of the administration account, and which is a charge upon the estate, if paid out of the rents is a proper credit as against the ward, in a settlement for the rents.

Appeal by George S. Eyster, alleged guardian of William Adams, from the decree of the Orphans' Court of *Franklin county*.

The petition of William Adams was presented at the Orphans' Court held in Franklin county, in which it was alleged that at an Orphans' Court held in October 1835, George S. Eyster was appointed guardian of the person and estate of the petitioner, then a minor under the age of 14 years; that no account of his guardianship had been filed, and asking for a citation to file an account.

A citation was awarded 29th January 1850.

George S. Eyster replied that he was appointed guardian of William Adams by the Orphans' Court of said county, on the 6th day of October A. D. 1835, as appears by the record of said court; that the account of James Wright, Esq., administrator of Johnston

[Eyster's Appeal.]

Adams, father of said William Adams, was confirmed by said court on the 7th day of October A. D. 1835, and that there was a balance due said accountant of $31.46, as appears by the record of said court; that your deponent never gave bond, nor assumed the duties of said trust, neither has he to his knowledge received any money in the capacity of guardian as aforesaid; that your deponent knows not where moneys to any amount could be due said William Adams, as the only property left by said Johnston Adams has been occupied by said William and his mother since the death of said Johnston, and the greater part of the rents which have accrued have, as your deponent believes, been applied to the liquidation of the debts of said decedent, and the maintenance and education of said William.

An auditor was appointed, who reported that it appeared from the Orphans' Court docket, that George S. Eyster was appointed guardian of William Adams on the 6th October 1835. Also that Henry Ruby was examined, and testified that William Adams, the petitioner, was indentured to him as an apprentice to the printing business, as near as he could recollect, in 1840. His impression was that Mr. G. S. Eyster signed the indenture as guardian of William Adams. The property of the decedent is, he supposed, worth fifty dollars rent a year.

Mrs. Adams, the mother of petitioner, lives in the property of her late husband. He boarded with me while in the printing-office.

Another witness testified that he lived in the property in 1838; that he rented the property from Eyster, and paid thirty dollars rent for half of the house and lot. That he called on Eyster to pay him the rent, who told the witness to pay it to Mrs. Adams, as she was in the habit of receiving the rent; he, Eyster, did not receive any rent from me. I remained in the house three years, the last two rented from Mrs. Adams—she received all the rent. I cannot say whether Mr. Eyster rented the house to me as guardian or agent. Mrs. Adams occupied part of the house—the petitioner boarded part of the time with his mother.

In chief:—Can't say how much of the time he was at home since I left. The old lady often complained to me of trouble in collecting rents of the house and lot.

Another witness testified that the difficulty about the indenture was settled, and that the *mother* paid the witness $50 in consideration of the release of Adams from the indenture.

Another witness testified that he was the administrator of the estate of Johnston Adams, the father of the petitioner; that he filed his account in October 1835, at which time there was a balance due on said account of thirty-one dollars and forty-six cents. I think the widow paid me said sum. The petitioner was a small boy at the death of his father. Mrs. Adams frequently complained

[Eyster's Appeal.]

to me, after 1835, of the difficulty she had in collecting rents from her tenants. The petitioner lived some time after 1835 with his mother.

The auditor alleged, that being of opinion that the current of decisions in Pennsylvania was in favor of petitioner, he reported an account charging the guardian with two-thirds of the rents from 1st April 1835, with interest for most of the time; viz. rents and interest $627.56½; and he allowed credit for $31.46, the balance of the account paid by the widow to the administrator; also for the maintenance of the ward during the time he was living with his mother; also for the payment by the widow for the release from the apprenticeship; and for allowance and fees. From the balance reported against the guardian, the court directed interest to be deducted, and the result was a balance of $194.76 against the guardian.

Exceptions were filed on the part of *petitioner*, to the whole amount of the credits allowed; and others were filed on the part of the *guardian*.

The court ordered that the guardian be credited in the account with interest on the payments, from the time they appear by the report to have been made. The clerk was ordered to make a calculation accordingly, and the report, being so reformed, was confirmed.

It was certified by the clerk that no certificate was issued to Eyster of his appointment as guardian.

*McClellan* and *Smith* were for appellant.—It was contended that no part of the money charged came to the hands of Eyster as guardian.

That there was not sufficient evidence that he ever assumed the duties of guardian; and if he did, that the allowance to him was not sufficient; and that no interest should be charged against the guardian.

*McLanahan, Reilly*, and *Carlisle*, were for Adams, the petitioner.

The opinion of the court was delivered, June 27, by

CHAMBERS, J.—The first question raised in this case is, was Mr. Eyster the legal guardian of William Adams?

Mr. Eyster was appointed by the Orphans' Court of Franklin county, on petition, the guardian, of which the record is evidence; and whether a certificate of his appointment was issued by the clerk of the court is not material. The act of 1832 makes it discretionary with the Orphans' Court to require bond with security from the guardian of a minor; and the omission to require or to give such bond does not vitiate the appointment. Did Mr. Eyster accept the appointment? It was rightly said by Justice KEN-

NEDY, in Neutz *v.* Rutter, 1 *Watts* 235, that any act as guardian was an acceptance of the appointment generally, and he thereby became responsible as such. After his appointment, Mr. Eyster assumed to act in leasing the property of which the ward was part owner, and gave his assent to the binding of him as an apprentice. His authority to act in these matters could only be derived from his appointment as guardian, and is considered as evidence of an acceptance of the guardianship with its responsibility. That responsibility was to attend to and manage the interests of the ward with reasonable attention, and account for them with fidelity.

William Adams, the ward, was of seven or eight years of age, the only child of his mother, a widow, at the time of the appointment of Mr. Eyster. The only property of the mother and son consisted of a small house and lot, the rents and profits of which were estimated at fifty dollars per year. At the time of the appointment of guardian, it appears there was a balance due the administrator of the estate of Johnston Adams, the father of the ward, of $31.46, and which there were not personal assets to pay. The whole property of the ward consisted of his share, being two-thirds, of the house and lot referred to, to be applied to his maintenance and education, and which was subject to the charge stated in favor of the administrator. The comfort of the mother and child would require her to retain, for their shelter and home, a part of the dwelling-house. This she did, and the property, so far as could be rented out, was rented for thirty dollars. The income from this property for the support of the mother and child would be only so much as was left of the thirty dollars, after any charges of repairs, taxes, &c. The ward's share of this small patrimony would not have afforded the guardian the means of supporting him anywhere else than with his mother, whose affection would secure her attention and means of support not to be had from a stranger. We can well suppose that Mr. Eyster, as the guardian, to promote the best interests of his ward, and for her accommodation and the convenience of all parties, would allow the mother to maintain and school her youthful son, receive as she could the small rents receivable, and apply her son's share to that maintenance and education. The mother has continued to reside in the house from the decease of her husband, and with her the son has had his residence and home, whilst he resided in Chambersburg, which was for many years. So far as Mr. Eyster may have allowed the mother thus to act for her child, it was to the benefit of his ward. Her industry would have to supply the means of support, to which we cannot but suppose his share of the rents was inadequate. The widow, with propriety, paid the balance to the administrator, which was a charge on the realty, and, if not paid, might have been increased with costs, and for which she was fairly entitled to a credit out of the rents receivable.

[Eyster's Appeal.]

If the rents receivable were faithfully applied by the widow to the maintenance and education of her son as long as he was a charge to her, and it is not pretended that she acted with imprudence or without frugality, this ward has had the advantage of them, and it would be unconscionable and unjust that he should now make Mr. Eyster, his guardian, pay them over to him, though he never received any part of them.   We cannot see that it was to the disadvantage of the ward that his small income was applied to his support, by permission, through the hands of a faithful mother, rather than through the hands of his guardian.   The fifty dollars she advanced to relieve him of his apprenticeship, with which we suppose he was dissatisfied, could not have been saved from rents, but must have been the earnings of her own employment.   If Mr. Eyster is chargeable with the rents to his ward, the mother, who received all that were received, would be chargeable for the same to the guardian.

It has been said in this court, to be the harshest demand that can be made in equity, to make a trustee answerable for what never was in his hands, or to make up a deficiency not owing to his wilful default.   More ought not to be expected of guardians than common prudential care : they should not be made liable, unless under unfavourable circumstances : their acts expose them to the animadversions of the law for supine negligence, showing carelessness of duty and of the ward's interests : Johnson's Appeal, 12 *Ser. & R.* 317 ; Konigmacher *v.* Kimmel, 1 *Pa. Rep.* 213.   If guardians are to be held responsible for all negligence, and are not to be allowed the exercise of reasonable discretion and prudential care in managing the property of their wards, it will deter prudent men from assuming the office, which in itself is sufficiently onerous, and already undertaken by such men with reluctance.

The intelligent auditor who reported the account in this case charging the guardian with all the rents, expresses "his opinion of the extreme hardship of it," under all the facts of the same, and to which he felt himself compelled by the decisions on the subject.   We are not aware of any decisions in this court that would subject a guardian to such "extreme hardship," unless he was a wilful defaulter, or guilty of gross negligence, and which do not appear in this case from the facts on the record.

The facts necessary to the proper consideration and decision of this case were not presented as fully to the auditor by the parties as they ought to have been, and are wanting to enable the court to decide on or reform the account; and for want of testimony, the case will stand over, and it is committed to an auditor to ascertain the facts of the time of residence of William Adams with his mother, during his minority and after—his maintenance and education, and by whom, during his minority—the amount of rents received or receivable by the guardian, or by whom, during the same time—and

payments and disbursements for and in behalf of said William by his mother, or for and on account of the property; and report the same, together with an account of the indebtedness of George S. Eyster, as guardian, if there be such indebtedness under the facts and circumstances. *Thomas B. Kennedy, Esq.*, of Franklin county, is appointed auditor for the purpose, who will make report to this court.