## C. Bruce Walker *vs.* Lewis Covar and others.

On the 1st January, 1857, C. gave a mortgage of lands and slav's to secure the payment of a debt. The mortgage was duly recorded, and C. afterwards sold the lands. On the 4th March, 1861, the Sheriff, under executions against C., some senior and some junior to the mortgage, sold one of the mortgaged slaves for a sum sufficient to satisfy the senior executions and the balance of the mortgage debt. On bill to foreclose against C. and the purchasers of the land, *held*, that the mortgage debt was not satisfied by the sale made by the sheriff.

*Held, further*, That a purchaser of part of the lands had no equity, in 1868, to compel the holder of the mortgage to resort to his claim against the Sheriff before enforcing his lien upon the lands.

The purchaser's remedy was to pay the mortgage debt, and be subrogated to the rights of the mortgage creditor—*semble*.

The rule that a creditor having a lien on two funds may be compelled to resort, in the first instance, to the one on which the subsequent claim of another does not attach, is never applied where injustice may be done to the prior creditor as, for instance, where the fund to be resorted to is dubious, or is one which can be reached only by litigation.

Before JOHNSON, Ch., at Edgefield, June, 1868.

On the 1st January, 1857, the defendant, Lewis Covar, gave to George A. Addison a mortgage of a lot in Edgefield village and some slaves, to secure the payment of three promissory notes for $1,000 each, payable in one, two and three years, with interest. There were on the lot a hotel, some stables, and three law offices. The mortgage was recorded the next day, and, on the 13th June, of the same year, it was assigned by Addison to the plaintiff. Some

time in 1857, Covar sold the law offices to George W. Landrum, deceased; and, about the same time, he agreed, for valuable consideration actually paid, to sell the rest of the lot, with the hotel and stables, to Mrs. Susan Ann Bulkeley, then a widow, and gave her a bond, conditioned to make title. On the 4th March, 1861, the Sheriff of Edgefield sold, under executions against Covar, some of which were older and some younger than the mortgage, one of the mortgaged slaves. Before this sale, the greater part of the mortgage debt had been paid, but there remained a balance thereof, then due, amounting, with interest, to about $500. The slave was sold for $1,120, and this sum satisfied the executions against Covar, which were older than the mortgage, and left in the Sheriff's hands a balance of $600, and upwards, more than sufficient to satisfy the amount of the mortgage debt then due and unpaid.

The Bill in this case was filed to foreclose the equity of redemption, and for a sale of the land to satisfy the mortgage debt. Besides Covar, the heirs of Landrum and Mrs. Bulkeley, with her husband, were made parties defendant.

Mrs. Bulkeley alone defended the suit. Her answer was filed in May, 1868, and the principal grounds of her defense were substantially as follows: (1) That the sale by the Sheriff satisfied the balance then remaining of the mortgage debt; (2) that the plaintiff was barred of his remedy against the land by his *laches* in not pursuing the fund in the Sheriff's hands; or, at any rate, (3) that the plaintiff should be compelled to go upon the Sheriff for payment before enforcing his lien upon the land.

The facts of the case, in reference to the sale by the Sheriff, the balance in his hands, and the amount of the mortgage debt, were stated in the report of a Referee, and the case was heard on that report and exceptions thereto by Mrs. Bulkeley.

His Honor the Chancellor overruled the exceptions, and made a decree of foreclosure, directing the lands to be sold on the first Monday in October, 1868.

The defendant, Mrs. Bulkeley, appealed, and now moved this Court to reverse or modify the decree of the Chancellor, on the grounds:

First. That the money arising from the sale of the personal property in said mortgage, on the 4th March, 1861, by the then Sheriff of Edgefield District, was more than sufficient to satisfy the balance then due upon said mortgage.

Second. That the money arising from the sale of said personal
2A

property, after satisfying the senior judgments, belonged to C. Bruce Walker, assignee; and that he alone could sue for said funds; and that said defendant could, in no way, control the same.

Third. That after satisfaction of said mortgage, on the 4th day of March, 1861, by the sale of said personalty, the mortgage ceased, by the operation of law, to bind the realty, and should have been marked satisfied at that date.

Fourth. That, by the *laches* of the complainant, the funds arising from the sale of said mortgaged property have not been properly applied, and that it is in violation of law and equity to make the defendant liable for such neglect.

*Gary*, for appellant.

*Bonham*, contra.

June 28, 1870. The opinion of the Court was delivered by

Moses, C. J. The principles which govern the relative rights of creditors, claiming under mortgages and judgments against the same debtor, have been so fully adjudicated by the Courts of this State, and are so well understood, that no reference is necessary to the particular cases which have established them.

This cause does not directly involve the necessity of deciding as to the priority which attached on the several claims against the property of the defendant, Lewis Covar. The only question made is as to the satisfaction of the plaintiff's mortgage, through the sale, by the Sheriff, of one of the slaves included in it, under senior executions against the mortgagor, leaving, as is alleged, a balance more than sufficient to satisfy the amount due on the mortgage at the date of the sale, and to which, it is averred by the defendant, Mrs. Susan A. Bulkeley, the plaintiff is entitled in preference to the junior execution creditors.

She sets forth, in her answer, that shortly after the execution of the mortgage, by her father, the said Lewis Covar, she, in consideration of certain moneys paid, received from him a bond for title to the real estate covered by it, of which she took and held possession until her removal to Alabama. That Amanda, one of the slaves conveyed by the mortgage, was, on the 4th of March, 1861, sold by the Sheriff of Edgefield, under executions against the said Covar, and that, after satisfaction of those senior to the mortgage, a balance remained applicable to it, more than sufficient for its payment; and that it is, therefore, to be regarded as satisfied. Did the

sale of itself produce such result? The mortgage was not in the hands of the Sheriff—the sale was not under it, but on executions against the mortgagor. Had it been by the Sheriff, as agent of the mortgagee, he would be recognized by the Court in that relation, and his act would bind the principal. The officer, however, in no way represented the plaintiff. It is true he might sue the Sheriff for the balance in his hands, as for money had and received to his use; but such right of action does not amount to satisfaction, for he is not bound to resort to it if he prefers to pursue the other property, which he also holds under the mortgage, as his security.

It is to be remarked that, from the day of the sale to the final hearing in August, 1868, although interested in the application of the said proceeds to the satisfaction of the mortgage, she has never pursued any remedy to that end against the proper parties, nor has she, since made a defendant in this cause, taken any steps to bring before the Court the Sheriff and the junior creditors, so that effective control could be had over the fund, and the relative rights of all interested in it adjudicated and concluded.

The plaintiff was in no way privy to the sale, and yet, with this *laches* on her part, she now seeks to compel him to look for payment to the Sheriff, by a litigation at his own expense and trouble, and to suspend his right to satisfaction through the land, until the result of it should show whether he realizes anything from the source to which she asks to refer him.

Subject to some qualification to be hereafter referred to, it may be admitted, as a rule of the Courts of Equity, that, if a creditor holds double securities, he shall take his satisfaction out of the one upon which another creditor has no lien; and the rule is applied to other persons standing in a similar predicament.—Story's Eq. Juris., §§ 559,560. "It is, however, never applied except where it can be done without injustice to the creditor or other party in interest having a title to the double fund, and without injustice to the common debtor."—Ibid, 560.

A doctrine based strictly upon principles of equity should not be enforced where it would result to the prejudice of one who, with at least as high an equity, has also a legal right which it is sought to delay. The mortgagee was entitled to collect his demand through the land, or the negroes, or both, and if his endeavor to make it available by a resort to the proceeds of the sale of one of them is beset with difficulties and embarrassments, why should he be forced to encounter these for the benefit of a party

who, when she contracted to purchase the land, had full knowledge of his mortgage, and who, even to this moment, has neglected to make parties in the cause those whose presence was so indispensable for the proper adjustment of the claim she now prefers?

Such relief as is here asked is never granted, if the prior creditor is thereby endangered, or his right to raise the money out of both funds the least impaired.—*Everton* vs. *Booth*, 19 John., 493; *Evans* vs. *Duncan*, 6 Watts, 24; *Ramsay's Appeal*, 2 Watts, 220. Or where the fund to be resorted to is dubious, or one which may involve him in litigation, notwithstanding the claims of a junior creditor may be defeated thereby.—*Fowler* vs. *Barksdale*, Harp. Eq., 165; *Goodwin* vs. *The State Bank*, 4 Des., 393; *Moore* vs. *Wright*, 14 Rich. Eq., 134.

To apply the rule, independent of such restrictions, would convert what was intended for the protection of the creditor into a burthen; and the very benefit which he sought by requiring multiplied securities would be lost, if, for the purpose of enforcing his debt through either, he should first be compelled to incur all the chances of a litigation, by being referred, for his payment, to one of them which he regarded more hazardous and precarious than that to which his own judgment directed him to resort.

The rule, as now understood and enforced, operates no hardship upon this defendant, who claims to occupy a position in which she should be relieved from the operation of the mortgage on the real estate.

If she regards the remedy which the plaintiff may have through the mortgage of the slave, Amanda, for the balance of the proceeds of the sale, she cannot complain if the plaintiff is permitted to pursue the land for his debt, and give her the benefit of any claim he may have to the said proceeds. If the burthen is not too heavy for him, she cannot complain if the weight is enforced upon her. She may ask that the remedies of the plaintiff, after they have served his purposes by producing satisfaction of his debt, may be subjected to her disposition without restraining him in their use in the first instance.—*Aldrich* vs. *Cooper*, 1 W. and T. Lead. Cas. in Eq., 230, note.

It is ordered and adjudged, that the order of the Chancellor, the subject of the appeal, be affirmed and the motion dismissed; and as the day fixed by it for the sale of the mortgaged land has elapsed, that the cause be remanded to the Circuit Court for the County of Edgefield for all necessary and proper orders to carry out the de-

cree for foreclosure, as directed by the Chancellor, and for any other orders not inconsistent with the judgment of this Court, now hereby given.

*Willard,* A. J., and *Wright,* A. J., concurred.