Bennett Estate.

Argued November 21, 1950. Before DREW, C. J., STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Erwin L. Pincus,* with him *Bernard A. Fischer* and *Harry Fischer,* for appellant.

*Maurice Heckscher,* with him *Carl Rice, Michael Kivko, John B. Martin* and *Duane, Morris & Heckscher,* for appellees.

OPINION BY MR. JUSTICE LADNER, January 4, 1951:

The decedent, Mary W. Bennett, died October 10, 1946. She had made a holographic will in which she appointed as executors Michael Kivko, Esq. and Carl

Rice, Esq., members of the Northumberland County bar. By her will she left her entire estate to the appellant, Jacob Wagner, who is not related to her. The bequest reads as follows: "SECOND: All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate, I give, devise and bequeath to Jacob Wagner, now of 142 West 77th Street, New York (24), N. Y., in fee simple, and absolutely, this, in consideration and appreciation of his kindness to me at a time when I needed a friend more than anything else, (he being a custodial officer at the U. S. Penitentiary, at Lewisburg,) and I am directing that he have, use and enjoy this estate bequeathed to him, but to take care of it so as not to become poor and needy or pauperized, it being my wish that he shall always have something; and that he shall not interfere with my executors hereinafter named, in their settlement of my estate so given him, as I have every confidence in them, and in their honesty and integrity, and know they will do the things required of them in the settlement of my estate, in a legal and proper manner, according to law."

Her will was contested by the next of kin in an appeal from probate charging want of testamentary capacity and undue influence exerted by Jacob Wagner. Wagner employed no counsel of his own but acquiesced in the action of the executors in defending the will and employing the necessary associate counsel in Union County. The contest proceeded to a hearing which lasted four days and after briefs were filed and argument had, the court refused an issue and dismissed the appeal.

Upon the filing of an account, objections were filed by Jacob Wagner, the principal one of which took exception to the items of credit aggregating $19,300 for executors' commissions and counsel fees. This account was then referred to Merrill W. Linn, Esq., as auditor.

The auditor, after protracted hearings (some seven in number) filed a comprehensive report in which he dismissed the objections to the account. To his report exceptions were filed by Jacob Wagner, all of which were dismissed and the auditor's report confirmed by the court and from the decree of final distribution that followed, this appeal was taken.

At the argument it was contended that the learned court below erred in dismissing exceptions to the auditor's report, which approved the credit taken in the account for executors' commissions and counsel fees. As we understand it the appellant claims (1) the executors should not have included in their fee any services rendered in the will contest because it is not the duty of executors ordinarily to defend a will contest. (2) In any event, the fees and commissions charged were excessive.

It is of course true as most recently stated by Mr. Justice ALLEN M. STEARNE in *Faust Estate,* 364 Pa. 529, 531, 73 A. 2d 369 (1950), ". . . an executor has no authority, at the expense of the estate, to employ legal counsel *in a will contest.* Such a contest is between the testamentary beneficiary and the heirs or next of kin. . . . He is not required to defend the will. If, however, the executor does engage in the contest he must look for compensation to those who authorized him to engage therein: Royer's Appeal, 13 Pa. 569; Yerkes's Appeal, 99 Pa. 401; Arnold's Estate, 252 Pa. 298, 97 A. 415; Fetter's Estate, 151 Pa. Superior Ct. 32, 29 A. 2d 361." This rule while general is not without exceptions as e.g., where the executor is designated or vested with the power of a trustee: *Mead v. Sherwin,* 275 Pa. 146, 156, 118 A. 731 (1922); *Lowe's Estate,* 326 Pa. 375, 384, 192 A. 405 (1937). So, too, another exception analogous thereto would be where a testator directs or imposes a duty on the executor to defend the will against contests.

In this case the auditor found on adequate evidence that though Wagner was the sole legatee and not of kin he retained no attorney of his own to defend him in the will contest, that by his conduct at least, acquiesced in the steps taken by the executors to defend the will, accepted their services and approved their choice of Cloyd Steininger, Esq., of Union County, as associate counsel to join the defense of the will. Wagner was the beneficiary of the successful efforts of counsel to defend the will. Apart from this, as the auditor pointed out, it was not unreasonable for the executors to interpret the mandate of the second item of the will above quoted as imposing on them a duty to defend the will against the next of kin, and certainly it was the duty of Wagner, if he disagreed with that interpretation, to make known his dissent and to engage counsel of his own. In such circumstances he cannot be permitted to stand by, accept the fruits of the labors of the executors, as counsel, and then refuse to pay them. If, then, Wagner is liable for the services thus impliedly engaged or accepted, there is no point in striking the item out of the account in view of the fact that he gets the whole estate. No other beneficiary exists nor are any unpaid creditors concerned. We need not apply the rule of *Faust Estate* if the reason therefor does not exist. The reason behind the rule was first announced in *Mumper's Appeal*, 3 W. & S. 441 (1842), by Mr. Justice KENNEDY. He pointed out whether a will is established or not is the concern of those who claim as legatees or devisees as opposed to those who claim as next of kin, and it is clear that the creditors and the rest of the world would have no interest in the question. Therefore, it would seem to be just, as well as equitable, that those who have the immediate and direct interest in the question should be left to contest and bear all the costs and charges attending it. It ought to be left

to them to employ counsel or not as they please, and consequently to bear the expense of so doing.

Here no such reason exists and therefore the credit taken in the account need not be stricken out. As early as *Scott's Estate*, 9 W. & S. 98 (1845), it was held that where an executor litigated not for his own interest, but for the interest of the party that got the whole estate by the litigation, he was entitled to take credit in his account for counsel fees and expenses incurred in defending the will contest.

We pass to the next contention that in any event the amount charged for fees and commissions was excessive. We have said repeatedly that the amount of executors' commissions and counsel fees is peculiarly one for the court below and as recently well stated by Mr. Justice JONES, findings of fact by an auditing judge or auditor of the value of legal services, approved by the court en banc, and supported by the evidence, are binding on appeal: *Davidson Trust*, 354 Pa. 333, 47 A. 2d 145 (1946). The auditor's finding that the sum allowed was reasonable is supported by adequate evidence including the testimony of five members of the bar whom the auditor refers to as leading lawyers of their respective bars, viz., Northumberland, Snyder and Union. The auditor properly observes that while this testimony is in no sense controlling, it is entitled to respect. The auditor appraised the fees in the light of the applicable principles as laid down in *Huffman Estate, No. 3*, 349 Pa. 59, 36 A. 2d 640 (1944). His findings had the approval of the learned court below and we see no reason to disturb them.

Next the learned counsel for appellant argues that the charge of a commission of 10% made in this case was excessive. But the record fails to show any such commission was charged. In appellees' brief it is demonstrated that the total commission charged was $4,300, being approximately 5% of the gross personal estate

and income, the balance, $15,000, being counsel fees of the two executors and Mr. Steininger, all three of whom participated in the contest and the executors acted as their own counsel as well in probating the will, settling the estate, filing an account, resisting the claim of surcharge, etc. Here again the learned counsel for appellant is confronted with the well settled rule that "Supervision of the amount of compensation is peculiarly within the discretion of the court below. Unless such discretion is clearly abused the judgment will not be disturbed on appeal": *Faust Estate,* 364 Pa. 529, 530, 73 A. 2d 369 (1950). We find no such clear abuse of discretion here.

Finally we are urged to appoint an auditor of our own or refer the case to the Philadelphia Orphans' Court so as to enable the appellant to raise seven other questions enumerated in his brief. These questions we need not restate. Suffice it to say that as to such of the questions as were raised before the auditor and disposed of by him, they could not be re-examined by another auditor, and as to such as might have been raised before the auditor but were not, the appellant is concluded by the confirmation of the account unless the court below on timely application sees fit to grant a review.

Undoubtedly the Orphans' Court Act of June 7, 1917, P. L. 363, Sec. 22(b), 20 P.S. 2602, gives us the discretionary right to refer an Orphans' Court proceeding to an auditor appointed by this court if we think justice requires it, but that power will be, as it has been in the past, most sparingly exercised and will not be permitted as a substitute for a bill of review: *Stewart's Appeal,* 86 Pa. 149 (1878). In fact the Reports show only two cases* wherein that power was

---

* *Lentz's Accounts,* 5 Pa. 103 (1847); *Eyster's Appeal,* 16 Pa. 372 (1851).

ever exercised—both before the Constitution of 1874, and never since then. Perhaps only in a case where there is no other way in which right and justice may be done ought that power be exercised. This is not such a case. The request for transfer of the case to the Philadelphia Orphans' Court is most novel. We have been referred to no statute which gives us the right to transfer an Orphans' Court case from one judicial district to another. True, a judge of one district may, in the circumstances outlined by Sec. 3(a) of the Orphans' Court Act of 1917, P. L. 363, 20 P.S. 2121, call upon a judge of another judicial district to sit specially. And judges free to take such special assignments may register their willingness to accept such a call with the Prothonotary of this Court; that, however, is an entirely different matter. But even if we had the power pursuant to our general supervisory jurisdiction under the "King's Bench Power" we see no reason to exercise it here, and by doing so cast an undeserved reflection on the learned judge below in whose ability and fairness we have every confidence.

Decree affirmed at the appellant's costs.

---

OPINION BY MR. JUSTICE BELL, concurring in part and dissenting in part:

I concur in part and dissent in part.

Wagner's first contention is that he never employed the executors or authorized them to engage in the will contest or to employ counsel. In this I believe he is absolutely correct. The executors admit that they were *never expressly* employed by Wagner in any capacity; Mr. Kivko testified that when he asked Wagner if he wanted the executors to represent him "Wagner just blew his top off"; and the auditor found, based on ample testimony, that "Wagner refused to hire the executors or to sign any kind of an agreement to retain them or anyone else". Even in this Court, the

executors complained that Wagner gave them no assistance and constantly impeded their efforts. It is therefore difficult to understand how the majority find that Wagner's failure to employ his own attorney or to vigorously object to what the executors were doing in behalf of the estate implied acquiescence on his part and hence employment. This conclusion seems to me to be a non sequitur; and in the light of the evidence, unsustainable.

The general rule that an executor is not required to defend a will and has no authority to employ counsel at the expense of the estate in a will contest is clearly and ably stated, together with its exceptions, in the majority opinion. I would approve the action of these executors and their employment of counsel by adding another exception to the aforesaid general rule, viz.: An executor is authorized to defend a will and to employ counsel in a will contest at the expense of the estate, if none of the beneficiaries of the will attempt to defend the will.

Wagner's second contention is that the fees and commissions charged were excessive. Mrs. Bennett's estate, as shown by the Inventory and Appraisement, totaled $75,459.00, composed as follows: Cash ($8405.71); Household Furnishings ($3624.78); Jewelry and Clothing ($8555.50); Stocks ($54,900.). These stocks were: 1300 shares, Crucible Steel Company, $46,150.; 1200 shares, Curtiss-Wright, $6750.; 20 shares, Citizens Electric Company, $2000. Decedent's debts totaled only $365.90 and her funeral expenses, $861.73.

Obviously the estate was a very simple one and was exceptionally easy to administer and distribute. As further illustrating its simplicity, the total Debits, Income Account, were $832.84 and the total Credits, Income Account, None. In order to pay executors' commissions, counsel fees and taxes, the Curtiss-Wright

stock was sold at a gain of $450., the Citizens Electric Company stock was sold at a gain of $20., and 600 shares of Crucible Steel Company stock were sold at a very large loss of $7562.50—over 33%. The executors eventually distributed to Wagner, the sole legatee: (1) Jewelry, wearing apparel and household goods, in kind, at their inventory value and (2) 700 shares of Crucible Steel Company stock at its inventory value; and as appears improperly in the account, $1000. cash to Wagner representing payments on account of distribution over a period of a year. The total inventory value for distribution amounted to $37,030.28, but the assets had a market value of less than $30,000. (if Wagner could sell the jewelry, clothing and household furnishings at their inventory value).

The executors, in what was described as Appraisement and Net Income, claimed deductions and executors' commissions of $8200. In their First and Final Account the executors rendered a *combined charge* for their services as executors and counsel of $9300., and in addition claimed additional counsel fees qua counsel. While the executors qua executors or qua lawyers did a large amount of work in the will contest, this is only one of the factors to be considered in determining compensation for either an attorney or an executor: *Gardner's Estate,* 323 Pa. 229, 238, 185 A. 804; *Quigley's Estate,* 329 Pa. 281, 295, 198 A. 85; *Harrison's Estate,* 217 Pa. 207, 66 A. 354; *Huffman Estate (No. 3),* 349 Pa. 59, 64, 36 A. 2d 640; *Robbins v. Weinstein,* 143 Pa. Superior Ct. 307, 314, 17 A. 2d 629. Two of the other factors to be taken into consideration are the skill with which the estate was administered and the will defended, and the amount involved. It has been the experience of every lawyer that the amount involved often necessitates a much smaller fee than the work would have otherwise justified. The compensation or commissions and fees claimed by these executors, qua execu-

tors, and by three counsel, two of whom were these executors, amounted to $19,300.—over 25% of the gross estate and approximately 40% of the net estate. This is too much; and the award thereof, being a clear abuse of discretion, constituted palpable error necessitating a reversal or modification of the decree.