**Leonhard  Estate**

*Thomas A. Ehrgood,* of Ehrgood & Ehrgood, for accountants.

*James R. Whitman,* of *Lewis, Brubaker, Whitman & Christianson,* and *William F. Hickey,* for objector.

GATES, P. J., January 20, 1972.—Michael A. Leonhard died on June 22, 1967, leaving a last will and testament dated February 5, 1961. He named his brother, Edward D. Leonhard, Jr., and his sisters, Barbara Leonhard McFarland and Patricia Leonhard Morell, as sole legatees, to the exclusion of his wife, Ann Sue Leonhard, now Sweeney. He appointed his sister and her husband, Patricia Leonhard Morell and William N. Morell, Jr., as coexecutors.

Michael A. Leonhard and Ann Sue Leonhard had been married on August 11, 1962. They separated in February of 1964. Protracted litigation and negotiations relative to a property settlement followed, and a property settlement was agreed upon but never finalized due to the accidental death of Michael Leonhard on June 22, 1967.

After the will was probated, Ann Sue Leonhard filed a timely election to take against the will, inasmuch as she was still married, and no formal separation agreement and disclaimer existed between the parties.

After appropriate litigation, we held that Ann Sue Leonhard had a right to take against the will and to have her widow's exemption.

Subsequently, on June 19, 1969, the executors appealed our decision to the Supreme Court of Pennsylvania. Later, our decree was affirmed with the directions, "Estate to pay costs."

Thereafter, the second and final account was filed on December 29, 1969. Included in the account were credits for the cost of printing the executors' brief in the amount of $93.23, the costs of printing the record in the amount of $636.58, and an attorney's fee for representing the executors before the Supreme Court in the amount of $2,125.89.

Exceptions were filed to the account, and an audi-

tor was appointed and a hearing held by him on January 14, 1971.

On September 20, 1971, the auditor filed his report which was confirmed nisi on the same date. Prior to confirmation absolute, Ann Sue Leonhard (Sweeney) filed objections to the auditor's report.

Although there are seven objections to the auditor's report, they can be grouped in two categories, and we shall consider them in that way.

The first category of complaints charge that the auditor erred in allowing the printing costs and attorney's fee in connection with the appeal by the executor of our decree allowing the widow's exemption and affirming her right to take against the will.

Both of counsel concede in their briefs the several basic fundamental principles of law. First, it is conceded that an executor is not required to defend the will. Furthermore, an executor has no authority at the expense of the estate to employ legal counsel in a will contest. Such a contest is between the testamentary beneficiaries and the heirs or next of kin. Actually, this is not much of a concession, for this is clearly the law in this Commonwealth: Faust Estate, 364 Pa. 529; Bennett Estate, 366 Pa. 232; Fetter's Estate, 151 Pa. Superior Ct. 32.

While conceding the general rule, counsel for the executor attempts to fit the facts in this case in the category of an exception to the rule. Unfortunately, it does not fit.

Here, testator excluded his wife from his will. Upon his death, his widow filed an election to take against the will. The matter was heard before us, and we ruled that she was entitled not only to her widow's exemption but to take against the will. At this point, the executor's duty to defend the will terminated. If the

executors chose to appeal our decision in further contest of the will, they must look for compensation and expenses to those who authorize them to engage in the appeal. If their appeal had been successful, the beneficiaries named in the will would have enhanced their inheritance. Logically, they should pay the expenses of the appeal. It would be illogical to assess the successful widow with a portion of litigational costs she did not invite or engage.

It is no answer to the issue by pointing to the Supreme Court order that the estate is to pay the costs. Since the estate itself appealed, the Supreme Court obviously assumed that they had paid their costs. The purpose of entering a costs order was to make it clear that the appeal costs of the widow were to be paid by the estate, since she was successful.

In Fetter's Estate, supra, where an executor attempted to credit the estate not only with counsel fees but with a $750 expert witness fee in a will contest, the court not only refused to allow the counsel fee, but the witness fee as well. The underlying rationale was that the executor owed no duty to contest the will. Therefore, no expenses in connection therewith should be credited by the accountant to the estate. In our case, the executor owed no duty to contest the will, and any costs and fees incurred in doing so should not be paid by the estate.

In brief, the executor must look to those who engaged and authorized the appeal, and they will most likely find them in the group of testamentary heirs. Consequently, we will sustain the objectors' first, second and third objections.

Objectors' second category of objections presents a more difficult problem. In the main, these objections relate to the propriety of a distribution in kind of the corporate stock and to the propriety of the executors

in retaining the stock and not immediately converting. it, as is ordinarily an executor's duty.

The auditor indicates in his report that:

"Reference to the testimony and the Memoranda of Law makes it clear that the objections in connection with the stock and the distribution in kind as well as the first objection to the Second and Final Account were abandoned by the Objectant, Ann Sue Leonhard Sweeney."

The objector now asserts that she has not abandoned her objection in this regard.

At the hearing before the auditor, there was testimony to the effect that the then counsel for the objector agreed with the other heirs that the stock be retained. At that time, counsel for the accountants indicated that he had letters in his files which would confirm this agreement. Unfortunately, at that point in the testimony matters were discussed off the record. We can only assume that the purpose of going on the record, from the sequence of questions, was to permit counsel to examine his voluminous file to locate these letters. Counsel for the accountant now attaches these letters to his brief which clearly indicate that there was an agreement that Mrs. Leonhard would not object to the retention of the stock by the estate.

Briefs and exhibits attached to briefs and not part of the record form no part of the formal record upon which we can base an adjudication. Therefore, if the objector wishes to further pursue her contention with respect to the stock, she will have to file a request for further hearing before the auditor. We are loath to further delay the settlement of this hotly contested estate, but we owe a duty to present a record that is full and complete and one that would justify our ultimate conclusions. In the present state of the record,

the accountant certainly should have the opportunity of proving and establishing on the record the existence of an agreement to retain the stock and for distribution of the same in kind.

After considering carefully all of the contentions of the parties, we will enter the following

### DECREE

And now, to wit, January 20, 1972, leave is granted to the objector to request a further hearing before the auditor on the question of the propriety of the retention of stock by the accountant and of the propriety of the proposed distribution in kind of said stock within 20 days from this date. If no request is filed within that time, the auditor's decree, as modified by the foregoing opinion by the disallowance of the printing costs and attorney's fees in connection with the appeal to the Supreme Court, is to be confirmed absolutely.