## In re ASSOCIATED TOWEL & LINEN SUPPLY CO.
### No. 22559.

District Court, S. D. California, Central Division.

July 17, 1934.

700

Leo D. Epstein and Charles Murstein, both of Los Angeles, Cal., for trustee.

Paul R. Hutchinson, of Los Angeles, Cal., in pro. per.

JAMES, District Judge.

Paul R. Hutchinson, Esq., filed a claim with the trustee for the sum of $2,719.50 as for services rendered to the bankrupt prior to the commencement of the bankruptcy proceedings. The involuntary petition in bankruptcy was filed February 21, 1934, and on February 28, 1934, the alleged bankrupt, by the claimant (counsel), filed an answer. At a later date consent was given to the making of an order of adjudication. The same counsel appeared throughout for the alleged bankrupt, both before and after the adjudication, and the schedules as filed are shown to be under the cover of Mr. Hutchinson. The trustee objected to the claim on the ground that it was exorbitant. When the matter came on for hearing before the referee, counsel for the trustee stated that he would ask Mr. Hutchinson to take the witness stand and testify concerning his claim. This the claimant did. He stated that his main services were performed in an action heard in the superior court of the state in which the bankrupt was the defendant, and in that suit an injunction was issued restraining certain acts of the defendant with reference to a solicitation of business. In that respect he testified that on contempt proceedings he represented the defendant, saying: "And we were days on it, in court, there being twelve or fifteen violations, and the fines amounted to $75.00 or 75 days in jail on those violations for contempt, and the defense to all of those I prepared myself, without a great deal of help from the officers of the corporation. I practically had to dig out the facts myself in regard to the matters set forth in the complaint; and the law on contempt is rather strict and technical. The first time we were up there we were successful in getting a fine which was not so great; and the second time we got them off without a fine or jail sentence at all; and the third time we had a fine of $1,000.00, and on subsequent motion before the court succeeded in reducing that by the amount of $400.00, to $600.00." He stated that during the time he was employed by the defendant there (the bankrupt) he had no arrangement as to the amount of his fee and that he did not state any amount to them because he didn't know when he would finish the case; that he was anxious to appeal the case. He was asked when was the first time he sent the corporation a bill, and he stated:

"Early in this year and we finished the case up in January and I sent them an itemized bill showing them practically every conference and all the services I had rendered." Claimant had stated at the outset that he had arranged to call a Mr. Sheppard, who had appeared as counsel for the opposing plaintiff in the superior court action. After the conclusion of the claimant's testimony he inquired of the referee: "Doesn't your Honor want to hear the testimony of Mr. Sheppard in regard to my claim?" The referee replied: "No; that wouldn't add anything to it." It did not sufficiently appear that the matter of the amount of claimant's claim had become definitely agreed to prior to the filing of the bankruptcy petition. The amount did in fact appear in the schedule of debts which was presented through the claimant as counsel for the bankrupt. The matter was submitted to the referee on the apparent assumption that there was no question but that the matter of the reasonableness of the amount was the issue to be there determined. The referee had some comment to make regarding the propriety of fees charged for resisting repeated violations of an injunction order before the superior court and was inclined to the view, apparently, that such services were not justified.

Under the conditions under which the matter was submitted to the referee I can find no reason to criticize the latter for his statement that it would not add to the case to call the counsel who had opposed the claimant in the superior court action for the purpose of allowing him to state his opinion as to the value of the services. It is always for the court, where the question of reasonable value of legal services is presented, to decide the matter for himself after having full information of what the services consisted. In 3 Cal. Jur. par. 111, p. 714, the text-writer has properly summarized the law as established by the California courts on that subject, where he states: "While proper expert testimony is clearly admissible, it is not conclusive, either upon the jury or the court. It is not binding upon the jury, for they may apply to the testimony their own experience and knowledge of the character of such services. If this doctrine is applicable to jury trials, there is much more reason for applying it in a case tried before a court. The value of an attorney's services is a matter with which a judge must necessarily be familiar. When the court is informed of the extent and the nature of such services, its own experience furnishes it with every element necessary to fix their value. Consequently, the

trial court is not bound to fix the amount of the fee in accordance with the opinion of expert gentlemen, learned in the law. Attorneys are inclined to place a very high estimate upon the value of their services when rendered in important litigation; and also inclined to look with kindly eyes and sympathetic feelings upon the efforts of brother attorneys when engaged in establishing before the court the value of services performed in large estates fortunate enough to possess well-filled coffers. * * * It is well, and it is the law, that the court should temper this kind of evidence with its own calm judgment, based upon the amount and kind of labor performed, and to thereupon make its decree. Indeed, it is not necessary that any evidence of a professional nature be introduced as to the value of an attorney's services, at least in the case of services rendered an estate where the court is familiar with the legal services needed and can determine what is a reasonable fee from its own knowledge and experience." (The authorities sustaining the text are cited in the footnote.) So in this case the referee was at liberty to use his own judgment in fixing the amount of the fee; likewise, this court is at liberty where the facts are sufficiently displayed to concur or modify the referee's ruling. I am inclined to modify the order to a limited extent; that is, to fix the amount at $2,000 instead of $1,700, as the referee determined it to be.

The order of the referee is modified to the extent stated and as so modified is confirmed. An exception is noted in favor of the claimant.