Robbins, Appellant, *v.* Weinstein, Appellant.

Argued October 31, 1940.

308

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES
and HIRT, JJ.

*Harry R. Back*, for appellant in No. 165 and appellee in No. 222, submitted a brief.

*Jacob Weinstein*, in propria persona, with him *Charles Elkman*, for appellee, in No. 165 and appellant in No. 222.

OPINION BY STADTFELD, J., January 30, 1941:

These are cross-appeals by plaintiff and defendant from the final decree of the Court of Common Pleas No. 7 of Philadelphia County in a proceeding in equity, commenced by Samuel H. Robbins against Jacob Weinstein, praying that defendant be directed to turn over to plaintiff a check payable to plaintiff in the sum of $313.03, which came into defendant's possession as the result of a settlement in which defendant, as attorney represented plaintiff. Defendant filed an answer including new matter, claiming a lien thereon to cover a claim for $500 allegedly due him for legal services in said matter. Plaintiff filed an answer to the new matter denying that any fees of any kind were due plaintiff.

The essential facts of the case are as follows: In

September of 1936, plaintiff engaged defendant, to collect a claim of $2,500 (originally $3,000, but of which $500 was paid plaintiff directly), from a certain Rex Refining Company. Pursuant to defendant's activities, a settlement was affected between plaintiff and said Rex Refining Company in the sum of $2,500, by which certain installment payments were to be made plaintiff over a period of several years, until that amount was paid in full, and in the meantime the defendant as plaintiff's attorney and the attorney for Rex Refining Company were to hold certain papers in escrow, to be delivered to Rex Refining Company when plaintiff received his final payment. Up to June 16, 1937, plaintiff paid defendant $30.20 on account of fees and on June 18, 1937, when Rex Refining Company made its initial payment of $500 on account of the settlement, (the check for which was made payable to defendant) defendant demanded an additional fee of $95, which, with the item of $30.20 previously paid, would give defendant a fee of $125.20. On that date, defendant tendered plaintiff a check for $405 and endorsed thereon: "Pay Samuel H. Robbins or order net proceeds check Rex Refining Company $500 less balance of fee to date $95 (sgd) Jacob Weinstein" and ultimately plaintiff after a bitter dispute over the amount of defendant's fee, accepted this check. Defendant rendered all necessary services in the case up to the date of that check and endorsement and whatever he did thereafter, was at best incidental in order to close out the matter. From June 18, 1937 to February 14, 1939, defendant received and transmitted to plaintiff without comment $1,703.40 worth of checks (arising from the foregoing settlement) that were payable to the order of the plaintiff, and which had reached defendant's hands. The check in controversy was received by defendant on February 14, 1939.

The case came to be tried before CRUMLISH, J., sitting as a chancellor in equity, and he filed a decree nisi, dis-

missing plaintiff's bill and sustaining defendant's cross bill, and after exceptions were filed by both plaintiff and defendant, entered a final decree awarding defendant a lien on $175 and costs against said check of $313.03 and dismissing certain exceptions of both plaintiff and defendant. Both parties appealed from the final decree.

As the only substantial question involved is the amount of the fee to which defendant is entitled and the enforcement of the lien against the final check which he received, we may accept the essential findings of the chancellor as established. They are, in part, as follows: "4. Plaintiff engaged defendant to collect a claim of $3,000 from the Rex Refining Company on September 24, 1936. 5. Plaintiff and defendant did not expressly contract as to defendant's compensation on September 24, 1936, or at any other time. 6. Defendant advised plaintiff on September 24, 1936, that an action in replevin against the Rex Refining Company would be necessary; and promptly prepared the papers for the proposed action; but because plaintiff was unable to secure the requisite bond, this proceeding was abandoned. 7. At the instance of the plaintiff, the defendant held conferences with the then counsel of the Rex Refining Company from December 10, 1936, to December 21, 1936, which resulted, on the last mentioned date, in a written agreement of settlement; this agreement plaintiff declined to execute although he then obtained $500 from the said Rex Refining Company. 8. Sometime in January, 1937, the defendant prepared and on February 8, 1937, filed, on behalf of the plaintiff as a stockholder, a petition for dissolution of the Rex Refining Company in the Court of Common Pleas No. 1, as of December Term, 1936, No. 5179, because of the mismanagement of said corporation. 9. A hearing on the petition and answer thereto was had before KUN, J., on June 9, 1937. Without adjudicating the rights of the parties in this proceeding, KUN, J., suggested

that they confer as to a possible compromise. 10. That pursuant to the suggestion of Kun, J., the defendant negotiated for, and drafted, a second compromise agreement, whereby plaintiff agreed to accept $2,500 in full settlement of his claim, $500 thereof to be paid plaintiff upon the execution of said agreement, and the balance to be paid in various installments. The said agreement also provided that defendant, herein was to hold in joint escrow with one William Ginsburg, Esquire, attorney for the Rex Refining Company, certain papers and documents, which were to be surrendered to the Rex Refining Company upon payment of the final installment of the claim, and that at that time the dissolution proceedings in Common Pleas Court No. 1 were to be discontinued. 11. That on June 18, 1937, the down payment of $500 was paid by check, payable to the defendant herein, pursuant to the second compromise agreement. Defendant thereupon tendered to the plaintiff his personal check for $405, and endorsed on the back thereof, in the following manner: 'Pay Samuel H. Robbins or order net proceeds check Rex Refining Co. $500 less balance of fee to date $95., Jacob Weinstein S. H. Robbins.' 12. That a discussion ensued resulting in plaintiff's rejection of the tender. 13. On June 19, 1937, plaintiff returned to defendant's office and accepted his check for $405 endorsed as above stated. 14. That the parties did not agree at that time or at any other time that the above tender was in full payment for defendant's services in connection with plaintiff's claim against the Rex Refining Company. 15. Defendant's relation with plaintiff was not terminated on June 19, 1937, when plaintiff accepted the former's check for the initial installment under the aforesaid second compromise agreement, nor at any other time prior to February 15, 1939, the date of payment of the final installment on said compromise agreement. 16. Defendant continued as counsel of record in the equity proceedings before Common Pleas Court

No. 1, up to and including February 15, 1939. 17. Defendant received the various installment payments, totalling $1703.40, from the Rex Refining Company pursuant to the aforesaid second compromise agreement and transmitted all of them, with the exception of the last, to the plaintiff, who accepted the said installments without objection. 18. At no time during the period from June 19, 1937, to February 15, 1939, inclusive, did the plaintiff object to the continuance of defendant as his counsel in the prosecution and collection of his claim against the Rex Refining Company. 19. Upon receipt of the final installment, to wit, $313.03, defendant advised plaintiff to execute the requisite releases and to forward a check to the order of the attorney for the Rex Refining Company for $2.62 to pay for the costs of discontinuing the equity proceeding on the prothonotary's records. 20. Plaintiff executed the required releases, but forwarded a check for $12.62, which was in excess of the sum requested by $10 which plaintiff described as compensation to the defendant 'for going to the bank and taking the papers out.' 21. Defendant refused to accept the check for $12.62, and plaintiff thereupon tendered a new check for $2.62, which was accepted by the defendant. 22. Defendant tendered the check for $2.62 and the releases to counsel for the Rex Refining Company, and the papers and documents held in escrow were delivered to defendant, who in turn delivered them to plaintiff. 23. The equity proceedings in Common Pleas Court No. 1 were marked 'settled, discontinued and ended' on February 15, 1939. 24. On February 14, 1939, by letter under the same date, defendant demanded the balance of his compensation due for professional services in this matter, to wit, $175. 25. Defendant by his letter of February 14, 1939, informed plaintiff that he was retaining in his possession, the check amounting to $313.03, which represented the last installment payment pursuant to the second compromise agreement, until plaintiff paid the balance due

for his professional services, to wit, $175, thereby asserting his attorney's lien thereon, and has continued to assert the said attorney's lien to date. 26. Plaintiff did not acquiesce to defendant's demand of February 14, 1939, but on the contrary sought to recover possession of the check through his then counsel, I. Bernard Rotberg, Esquire. 27. Defendant received from plaintiff on account of professional services rendered the sum of $30.20 in various amounts from December 17, 1936, to February 10, 1937, inclusive. 28. Defendant consumed a total of thirty-three hours and ten minutes in connection with various negotiations with counsel, preparation of the required papers, preparation for the equity hearing, and the equity hearing. 29. The intricate nature of the negotiations, agreements, replevin proceedings, equity proceedings, and other work in connection with the collection of plaintiff's claim required unusual skill in the execution thereof by defendant. 30. The services of defendant in regard to the negotiations, agreements, replevin proceedings, equity proceedings, and other work in connection with the collection of the plaintiff's claim were so important to plaintiff that they were solely responsible for plaintiff's reimbursement. 31. Defendant's services were so beneficial to plaintiff that he secured the entire amount of his claim, to wit, $3,000, together with interest in the sum of $16.43. 32. The reasonable market value of defendant's services for plaintiff is $300."

Plaintiff contends that the defendant earned and was entitled to receive his fee when the matter was settled; that the fee was fixed and accepted; that he is not entitled to any additional compensation; and that he has no right to claim a lien on the final installment payment of the claim as any subsequent services rendered by him were incidental to the matter for which he had already been compensated. Furthermore, the defendant's conduct in demanding from the plaintiff and deducting from the initial installment payment compen-

sation for his professional services, in surrendering subsequent installment payments without deducting any fee and in failing to inform plaintiff that he intended to charge an additional fee until the final installment came into his hands, amounts to an estoppel.

Defendant, on the other hand, contends that the claim was for $3,000; that this sum plus some interest was collected as a result of his efforts; that he never reached an agreement with the plaintiff as to the amount of his fee; that the plaintiff refused to agree upon the value of his services; and that the amount deducted from the initial installment was on account thereof.

Defendant takes the position that since the plaintiff has brought the fund into a court of equity, he is entitled to have the question reviewed, the value of his services fixed and his claim therefor enforced; and that the reasonable and market value of his services is $500.

A careful examination of the entire record leads us to the conclusion that the findings of fact by the chancellor are supported by legally competent evidence. Where findings have been affirmed by the court en banc, they have the force and effect of the verdict of a jury.

In the absence of a special agreement, an attorney is entitled to be paid the reasonable value of his services. In addition to the labor and time involved, other factors must be taken into consideration, such as the character of services rendered, the importance of the litigation, the skill necessary, the standing of the attorney, the benefit to be derived from the services rendered, and the ability of the client to pay, as well as the amount of money involved.

The question of reasonableness is within the sound discretion of the court. In determining such reasonableness, the court may take into consideration the testimony of leading members of the bar: In re *Middlebys' Estate*, 28 Dist. 628; although it is not bound by such testimony: In re *Bank of Auburn*, 33 D.&C. 313. However, since the value of such service is necessarily

a matter with which the court is familiar, the court is not bound to fix the amount of the fee in accordance with the opinion of legal experts: In re *Associated Towel & Linen Supply Co.,* 7 F. Supp. 699, 700 (D. C. Cal. 1934). Quoting the language of Chief Justice SHARSWOOD in *Daly v. Maitland,* 88 Pa. 384, 387: "The Court, from practical knowledge of professional work, are able to say in every particular case what ought to be the compensation or rate of commission for collecting a debt by such."

Quoting from the opinion of the chancellor: "Plaintiff contends that the relation of attorney and client terminated on June 19, 1937, when defendant tendered to plaintiff his personal check for $405, which represented the second payment of $500, less $95 for professional services rendered 'to date.' Plaintiff testified that defendant gave him a receipt in full for all services rendered in connection with the controversy. However, defendant denied that such a receipt had been given; the plaintiff did not produce any. Furthermore, the use of the term 'to date' on the endorsement of the check would seem to indicate that the sum paid at that time was for professional services to that time alone at the most ...... At no time during the period from June 19, 1937, to February 15, 1939, inclusive, did plaintiff object to defendant's continuance as his counsel in the prosecution and collection of his claim against the Rex Refining Company, and plaintiff received the installment payments pursuant to the second compromise agreement from the Rex Refining Company through the defendant without objection. Again, the attorney's appearance of record is prima facie evidence of the client's liability for his services: *Roselius v. Delachaise,* 5 La. Annual 481, 482 (1850), *Mitchell et al. v. Bromberger,* 1 Nev. 604, 606 (1865). Defendant appeared as counsel of record for the plaintiff from the date of the institution of the dissolution proceeding before Common Pleas Court No. 1, to wit, February 8, 1937 to date it was set-

tled, discontinued and ended on February 15, 1939. Since there is no evidence to refute this, it would appear that the plaintiff would be liable."

Appellant Robbins further contends, as stated by the chancellor: "that defendant's tender of his personal check for $405, representing the second payment of $500, less $95 for professional services rendered, and endorsed on the back thereof, 'Pay Samuel H. Robbins or order net proceeds check Rex Refining Company $500 less balance of fee to date $95. Jacob Weinstein S. H. Robbins.' was an account stated between plaintiff and defendant, and thus was a good defense against any subsequent claim. In *Leinbach v. Walle*, 211 Pa. 629, 630 (1905), the court there defined an account stated to be an account in writing, examined and accepted by both parties, which acceptance need not be expressly so, but may be implied from the circumstances. If, as plaintiff contends, this was an account stated, there must be evidence of an acceptance, at least from the circumstances, by the defendant, and this element appears to be lacking so far as his acceptance of an account stated as to his services in their entirety and payment therefor is concerned. The absence of the alleged receipt in full, the terminology of the endorsement on the back of the check, defendant's failure to withdraw as counsel of record, and his continuance as attorney for the plaintiff in the transmission of the various installment payments indicate anything but acquiescence in the alleged account stated. Since the alleged transaction was not an account stated, it cannot be advanced as a defense to this claim." With this statement we are in entire accord.

If by reason of Weinstein's consideration for the financial circumstances of Robbins, Weinstein saw fit to defer payment by the said Robbins of the balance of fees claimed until the final collection of the total amount to be paid Robbins under the settlement with the Rex Refining Company, is no reason why Weinstein

should be deprived of the balance of his fee as it may be reasonably fixed.

While the testimony of a number of reputable lawyers of the Philadelphia Bar was that the reasonable fee for the services rendered by Weinstein to Robbins should be $500, in view of the letter of Weinstein to Robbins on February 14, 1939, in which he fixed his fee at $300, we cannot say that the chancellor abused his discretion in fixing the fee at the latter sum. There is no doubt that Weinstein rendered valuable services which produced most satisfactory results, and had the chancellor fixed the fee at $500 we would not have interfered with it, but in view of the discretion vested in and exercised by the chancellor, we cannot, under the circumstances, interfere with it.

The assignments of error in both appeals are overruled and the decree of the court below is affirmed. Costs in both appeals to be paid by Robbins, appellant at No. 165 October Term, 1940 and Appellee at No. 222 October Term, 1940.