

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-13-2006

# Blue Mt Env Mgmt v. Chico Entr Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4208

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Blue Mt Env Mgmt v. Chico Entr Inc" (2006). *2006 Decisions*. Paper 752.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/752

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 04-4208; 05-2888; 06-1532

———————

BLUE MOUNTAIN ENVIRONMENTAL
MANAGEMENT CORPORATION

vs.

CHICO ENTERPRISES, INC.; AUGUST ENVIRONMENTAL, INC.,
Appellants in 04-4208 & 06-1532

(D.C. No. 01-cv-00460)

CARIO PARTNERSHIP,
Appellant in 05-2888
vs.

CHICO ENTERPRISES, INC.

(D.C. No. 02-cv-00366)

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 01-cv-00460)
Magistrate Judge: Honorable Amy Reynolds Hay
(D.C. Civ. No. 02-cv-00366)
District Judge:   Honorable William L. Standish

———————

1

Argued May 17, 2006
Before: RENDELL, VAN ANTWERPEN and WEIS, <u>Circuit</u> <u>Judges</u>.
(Filed July 13, 2006)

_____

Alan S. Miller, Esquire (ARGUED)
Picadio Sneath Miller & Norton, P.C.
4710 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA   15219

<u>Counsel for Appellant Cario Partnership in 05-2888</u>

Avrum Levicoff, Esquire (ARGUED)
Joshua N. Perlman, Esquire
Levicoff, Silko & Deemer, P.C.
Centre City Tower, Suite 1900
650 Smithfield Street
Pittsburgh, PA 15222

<u>Counsel for Appellee Chico Enterprises, Inc., in 05-2888, and Counsel for Appellants</u>
<u>Chico Enterprises, Inc. and August Environmental, Inc., in 04-4208 and 06-1532</u>

Elaina A. Smiley, Esquire (ARGUED)
Robert E. Dauer, Jr., Esquire
Meyer, Unkovic & Scott LLP
1300 Oliver Building
Pittsburgh, PA   15222

<u>Counsel for Appellee Blue Mountain Environmental Management Corporation in 04-</u>
<u>4208 and 06-1532</u>

_____

OPINION

_____

2

WEIS, Circuit Judge.

These cases arise out of a common occurrence and, in the interests of judicial efficiency, we consolidate all of these appeals. Because this opinion is not precedential and the parties are familiar with the details, we recite only those facts relevant to our disposition of these three cases.

On January 31, 2000, an automobile collided with a gasoline pump at a service station owned by Chico Enterprises ("Chico"). To retrieve gasoline leakage caused by the accident, Chico used a vacuum truck and sponges. Soon after the incident, tenants of an office building on property owned by Cario Partnership adjacent to the gas station premises smelled gasoline fumes. The tenants evacuated the building and did not re-enter it for some months thereafter.

Chico, through its affiliate, August Environmental, Inc. ("August"), engaged Blue Mountain Environmental Management Corporation ("Blue Mountain") to perform testing and initiate remediation action. Blue Mountain proceeded with its work without a written contract and sent invoices to Chico periodically. At the end of its engagement, Blue Mountain contended that Chico owed it the outstanding amount of $209,982.29. When Chico refused to pay this amount, Blue Mountain filed suit. The District Court entered summary judgment for Chico, concluding that there was an "account stated" between the parties.

3

Cario sued Chico for damages it allegedly sustained as a result of the gasoline migrating to its land. The District Court concluded that the gasoline that leaked from the cracked valve could not have caused the contamination and entered summary judgment against Cario.

Chico and Cario have appealed the respective grants of summary judgment against them.

## I. STANDARD OF REVIEW

A court may grant summary judgment if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment will not be defeated by "the mere existence" of some disputed facts, but will be denied when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49. All inferences must be drawn in the light most favorable to the nonmoving party. Pa. Prot. & Advocacy, Inc. v. Pa. Dept. of Welfare, 402 F.3d 374, 379 (3d Cir. 2005) ("We are required to review the record and draw inferences in a

4

light most favorable to the nonmoving party, . . . yet the nonmoving party must provide admissible evidence containing 'specific facts showing that there is a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e)).

## II.  BLUE MOUNTAIN vs. CHICO

Under Pennsylvania law, an "account stated" is an account in writing, examined and accepted by both parties.  Leinbach v. Wolle, 61 A. 248 (Pa. 1905).  Acceptance need not be express and may be implied from the circumstances.  Robbins v. Weinstein, 17 A.2d 629, 634 (Pa. Super. Ct. 1941).  A party's retention of a statement of account for an unreasonably long time, without objection, may be a manifestation of assent.  See Restatement (Second) of Contracts § 282(1) (1981); see also, Donahue v. City of Philadelphia, 41 A.2d 879, 881 (Pa. Super. Ct. 1945).

The parties do not dispute the statement of the law contained in the report the magistrate judge prepared in this case.  Chico argues, however, that there is a genuine issue of material fact as to whether the parties assented to the account.  That is, Chico disputes whether the parties agreed to the accuracy or correctness of the debt.

The issue here is somewhat complicated by the fact that Chico was to be reimbursed for its remediation expenditures through an insurance fund and its adjuster was assigned to monitor the bills submitted by Blue Mountain.  The first Blue Mountain invoice totaled $208,630.46, but the adjuster approved only $114,556.84.  The first check Chico issued to Blue Mountain on May 3, 2000 was for $114,556.84, the same amount

5

the adjuster had approved.

Don Killmeyer, an official of both Chico and August, testified at his deposition that he did not personally examine the Blue Mountain invoices. Instead, he said it was August's policy to turn the invoices over to the adjuster upon receipt and allow him to determine what amount August should pay. According to the deposition, the adjuster told Killmeyer in May 2000 that he believed there were significant overcharges in the initial invoices. (App. in No. 04-4208 at 179).

Over the next few months, Killmeyer met several times with personnel at Blue Mountain and discussed the accounts receivable. He disclosed that Chico had talked with "the adjustor to see if they would reconsider any of their decisions in that respect." Id. at 180.

In December 2000 or January 2001, Killmeyer had a telephone conversation with the adjuster who repeated that he was concerned with the rates charged by Blue Mountain. Id. at 182. In January and February 2001, Killmeyer met with personnel from Blue Mountain and discussed the amounts due on its billings. Again, he told Blue Mountain that Chico was waiting for the insurance fund to "figure it out and see what was going to be forthcoming" and he "made representations that we would try to get them paid." Id. at 188-90. Killmeyer further stated, "I think we were very forthright in telling everybody that we were waiting on USTIF [the insurance fund] to determine on the invoices what was forthcoming." Id. at 190.

6

These references in the record are in contradiction to the District Court's recitals that the defendants "acknowledged the amounts due and owing . . . [and] confirmed an intention to pay . . . ." According to Killmeyer's testimony, he told Blue Mountain that the adjuster contested many of its charges and that whether the full amount of the invoices would be paid could depend on what the adjuster approved.

Moreover, Blue Mountain knew in May 2000 that the adjuster had approved only slightly more than half of its first invoice. This, of course, is far less than the two years of delay in objecting to the amount of the bills that the District Court thought had occurred.

We do not decide whether Killmeyer's testimony was true, only that it raises questions of material fact that undermine a finding of account stated. Because the record shows issues of disputed fact with respect to whether the parties assented to an account, the entry of summary judgment was in error. Consequently, we will reverse the District Court's grant of summary judgment in favor of Blue Mountain and remand for further proceedings consistent with this opinion.

### III.  RULE 60(b) MOTION

Chico also appeals the District Court's denial of its motion to vacate brought pursuant to Federal Rule of Civil Procedure 60(b). Because the grant of summary judgment will be reversed, we will dismiss the appeal of the denial of the Rule 60(b) motion as moot.

7

## IV.  CARIO  vs.  CHICO ENTERPRISES

Cario, the owner of premises located immediately adjacent to the service station, claims its property was contaminated by the gasoline leakage and brought suit under several theories, including the Pennsylvania Storage Tank and Spill Protection Act ("Storage Tank Act"), 35 Pa. Cons. Stat. § 6021.1305(c).

The Storage Tank Act provides for a rebuttable presumption of liability against the owner of a storage tank, such as the one here, "without proof of fault, negligence or causation" for pollution within 2,500 feet of the tank.  35 Pa. Cons. Stat. § 6021.1311(a).  The "presumption may be overcome by clear and convincing evidence that the person so charged did not contribute to the damage, contamination or pollution."  Id. But, "the owner or operator must affirmatively prove by clear and convincing evidence . . . [that] the owner or operator did not contribute to the damages, contamination or pollution."  35 Pa. Cons. Stat § 6021.1311(b).

This statutory provision places the burden of proof on the tank owner. Wack v. Farmland Indus., 744 A.2d 265, 267-68 (Pa. Super. Ct. 1999) (abrogated on other grounds by Trach v. Fellin, 817 A.2d 1102 (Pa. Super. Ct. 2003)).  Pennsylvania law applies to this presumption.  See Fed. R. Evid. 302.

A party with contaminated property is entitled to invoke the presumption when (1) the defendant owns an underground storage tank; (2) the tank is within 2,500 feet of the contamination; and (3) the tank contains or contained "a regulated substance of

8

the type which caused the damage, contamination or pollution." See Lehigh Gas & Oil Co. v. Pa. Dep. Envtl. Res., 671 A.2d 241, 246 (Pa. Cmwlth. Ct. 1995) (quoting 35 Pa. Cons. Stat. § 6021.1311(a)).

Don Killmeyer reported on February 1, 2000 that the shear valve cracked after apparently being struck by a vehicle and, "the pumps beneath three dispensers filled up with product. A Vac truck was used to remove the product and the shear valve was replaced." (App. in No. 05-2888 at 96).

On March 1, 2000, Brian Dressel of August reported that, on January 31, 2000, "[i]t was estimated . . . that the bulk of the released product was recovered by Vac truck" and that a subsequent hydrostatic test determined that the "sump was considered tight in accordance with the manufacturer's specifications." Id. at 122-23.

Eighty gallons of gasoline from the damaged pump, however, were not accounted for. Soil contamination was found at a point on Chico's property designated as MW-3, located seventy feet from the fuel pump and only ten feet from Cario's boundary line. Further, a site characterization report August submitted to the Pennsylvania Department of Environmental Protection identified MW-3 as a location for remediation following the accident that caused the broken value. Id. at 173. At another spot, designated MW-20, located on Cario's property some 200 feet from the tank, contamination was also found. MW-20 had higher levels of contamination than any of the other wells. Id. at 161.

9

Chico argues, however, that the leak on its property could not have caused this contamination because evidence showed the historical directional flow of the ground water was south-to-north, that is, away from Cario's property. That argument, however, is weakened by the contamination found at MW-3, which was south of the pump, and suggests that migration was against the ground water directional flow. Chico's own expert concluded that the contamination at MW-3 came from one of the fuel dispensers on Chico's property. Id. at 176-77.

Moreover, in a submission to the District Court following the filing of the magistrate judge's report, Cario's expert pointed out that several old foundations below the surface of the properties could have produced pathways that would allow gasoline and its vapors to migrate in a direction opposite to that of the general ground water flow. On this record, Chico has failed to demonstrate that it did not contribute to the contamination.

Although much of the dispute revolves around whether gasoline in its liquid form migrated to Cario's property, there remains the possibility under Pennsylvania law that the fumes from the spill that drifted onto Cario's property were air pollution within the scope of the Storage Tank Act. See 35 Pa. Cons. Stat. § 6021.1310 (providing that "[i]t shall be unlawful . . . to cause air, soil or water pollution . . . ."). We need not and do not, however, rule on that issue because the parties have not raised it before us.

We conclude that, the record before us is not adequate to establish that Chico has rebutted the statutory presumption and it was erroneous to enter summary

judgment.

We also conclude that there is a genuine issue of material fact with respect to Cario's remaining counts. With respect to Cario's negligence claim, the record reflects that there is a genuine issue of material fact with respect to whether Chico in fact caused the contamination on Cario's property. There is also an issue of material fact with respect to whether the release of gasoline contaminants onto Cario's property was caused by negligence on Chico's part. Further, "a violation of the [Storage Tank Act] can serve as evidence in a claim of negligence per se." Centolanza v. Lehigh Valley Dairies, Inc. 635 A.2d 143, 150 (Pa. Super. Ct. 1993).

With respect to the breach of contract claim, there is a genuine issue of material fact about whether the contaminants on Cario's property constitute a "release" that Chico was required to "remediate" per the access agreement.

Finally, there is a genuine issue of material fact with respect to whether the alleged release of gasoline contaminants from Chico's property amounted to a private nuisance. A "private nuisance" is "'a nontrespassory invasion of another's interest in the private use and enjoyment of land.'" See Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303, 313 (3d Cir. 1985) (quoting Restatement (Second) of Torts § 821D) (applying Pennsylvania law). Further, "while there must be a real and appreciable invasion of the plaintiff's interests" for an action for private nuisance to stand, "[t]he type of harm sufficient to permit recovery for nuisance is generally a question for the factfinder." Jones

11

v. Wagner, 624 A.2d 166, 170 n. 2 (Pa. Super. Ct. 1993).

Accordingly, we will reverse and remand to the District Court for further proceedings consistent with this opinion.